Trenton R. Kashima (SBN 291405)
**BRYSON HARRIS SUCIU DEMAY PLLC**
19800 MacArthur Boulevard, Suite 270
Irvine, CA 92612
Tel: 212-946-9389
tkashima@brysonpllc.com

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALEXANDER BULGIN** and **EMMA KROMBHOLZ**, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BOZZUTO & ASSOCIATES, INC.,** d/b/a The Bozzuto Group,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT - CLASS ACTION**<br>**1. VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**<br>**2. VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br>**3. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**<br>**4. VIOLATIONS OF VA. CODE ANN. § 59.1-608(A)**<br>**5. UNJUST ENRICHMENT**<br>**6. NEGLIGENT MISREPRESENTATION**<br>**7. FRAUD**<br>8. **DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs Alexander Bulgin and Emma Krombholz ("Plaintiffs"), by and through their counsel, bring this class action against Defendant Bozzuto & Associates, Inc., dba The Bozzuto Group ("Bozzuto" or "Defendant"), for deceptively advertising apartment rental prices that exclude mandatory fees consumers must pay to rent a unit.

## NATURE OF THE ACTION

1. This is a consumer protection action arising from Defendant's practice of advertising apartment rental prices that exclude mandatory recurring fees required as a condition of tenancy. By advertising one price to consumers and later imposing additional unavoidable charges, Defendant causes its apartments to appear less expensive than they actually are and deprives consumers of the ability to accurately compare housing options.

2. Housing is one of the most significant expenses consumers incur. Prospective tenants routinely compare apartment communities based on advertised monthly rent when deciding where to live, and even relatively small differences in advertised price can influence whether a consumer pursues a property, schedules a tour, submits an application, or ultimately enters into a lease agreement.

3. Defendant is a highly successful corporate landlord responsible for housing thousands of California and Virginia renters across at least eighty-nine apartment complexes in California and Virginia. Through Bozzuto.com (the "Website"), Defendant advertises apartment units, markets rentals to consumers, and facilitates the leasing process for prospective tenants.

4. California alone is home to nearly six million renting households, and more than one in four California renters live in corporate apartment complexes - the highest rate in the nation. In fact, California alone accounts for roughly fifteen percent of the country's 11.4 million tenants residing in large apartment communities. As a result, the pricing practices of large corporate landlords like Bozzuto have a substantial impact on California consumers.

5. Defendant competes for tenants by prominently advertising attractive monthly rent prices designed to entice prospective tenants. But the prices Defendant advertises are not the true or accurate price that consumers pay. Instead, Defendant draws renters in with artificially low advertised rents while concealing mandatory monthly charges that materially increase the

actual cost.

6. Price transparency is a cornerstone of consumer protection law. Consumers are entitled to know the true cost of a product or service before making a purchasing decision, and businesses that advertise deceptively low prices undermine consumers' ability to comparison shop and make informed decisions. Recognizing these concerns, California and Virginia have enacted some of the nation's strongest consumer-protection laws requiring businesses to disclose mandatory fees and charges upfront.

7. Defendant's pricing practices run contrary to longstanding consumer protection principles that prohibit deceptive and misleading advertising. Legislatures, regulators, and courts have long recognized that businesses should not be permitted to attract consumers with artificially low advertised prices only to later impose mandatory charges that increase the true cost of the transaction.

8. In January 2025, the Federal Trade Commission ("FTC") brought an enforcement action against Greystar Real Estate Partners, LLC for the identical drip-pricing conduct in apartment rentals, resulting in a $24 million settlement. On December 8, 2025, the FTC published industry-wide guidance warning all property managers that "advertising a rental price that excludes mandatory charges is a violation of the law." Despite this enforcement action and explicit regulatory guidance, Defendant has continued to engage in the same unlawful conduct.

9. Defendant's pricing scheme violates both California and Virginia consumer protection statutes designed to prevent deceptive and misleading business practices.

10. Nevertheless, Defendant continues to advertise rental prices that do not disclose mandatory fees. Consumers are drawn in by the advertised rent, only to later discover additional unavoidable charges for certain ancillary services, including "Administrative Billing," "Pest Control," "LuxerOne," and "Trash" fees.

11. At the properties identified below, these mandatory recurring charges range from approximately $7.14 to approximately $65 per month above the advertised rent, and Defendant separately imposes mandatory one-time charges ranging from approximately $261 to more than $1,100 that a consumer must pay in order to obtain the apartment at all.

12. By excluding mandatory fees from the advertised price of its apartments, Bozzuto creates the false impression that its units are more affordable than they truly are, distorts consumers' ability to compare competing housing options, and gains an unfair competitive advantage over competing landlords that disclose the full cost of tenancy upfront.

13. As a direct and proximate result of Defendant's unlawful, unfair, and deceptive pricing practices, Plaintiffs suffered injuries and damages and seek all relief available under applicable law.

## PARTIES

14. Plaintiff Alexander Bulgin is an individual citizen of the State of California and natural adult person who resides in Oakland, California.

15. Plaintiff Bulgin entered into a lease agreement for Defendant's "1900 Broadway" community and has paid rent and other fees to Defendant as described herein pursuant to that lease.

16. Plaintiff Emma Krombholz is an individual citizen of the Commonwealth of Virginia and natural adult person who resides in Alexandria, Virginia.

17. Plaintiff Krombholz entered into a lease agreement for Defendant's "The Asher" community and has paid rent and other fees to Defendant as described herein pursuant to that lease.

18. Defendant Bozzuto & Associates, Inc. (dba The Bozzuto Group) is a real estate and property management corporation organized under the laws of the State of Maryland with its principal place of business located at 6406 Ivy Lane, Suite 700, Greenbelt, MD 20770.

19. In California, Defendant operates 28 large apartment communities—most of which are in or near the San Francisco Bay area and some of which are in the greater Los Angeles area.

20. In Virginia, Defendant operates 61 large apartment communities, with a heavy presence in Northern Virginia and the Washington, D.C. suburbs.

21. Bozzuto & Associates, Inc operates its apartment communities under the unified "Bozzuto" brand through its centralized website, Bozzuto.com.

22. All advertising, pricing strategies, fee structures, lease terms, and operational policies are established, controlled, and directed by Bozzuto & Associates, Inc.

## JURISDICTION AND VENUE

23. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, because Defendant leases approximately 60,000 apartment homes nationwide, including units at eighty-nine communities in California and Virginia, and collected undisclosed mandatory fees of approximately $7 to $65 per month, plus one-time fees of hundreds of dollars, from each tenant during the limitations period. The proposed Classes contain well in excess of 100 members. Defendant is a citizen of Maryland, while Plaintiff Bulgin is a citizen of California and Plaintiff Krombholz is a citizen of Virginia. Minimal diversity therefore exists under 28 U.S.C. § 1332(d)(2)(A).

24. This Court has personal jurisdiction over Defendant because Defendant owns, operates, and manages apartment communities within this District and throughout the State of California, and regularly conducts substantial business in California. Defendant has sufficient minimum contacts with California and purposefully avails itself of the California market by advertising apartment units, marketing rentals, accepting applications, and entering into lease agreements with California consumers through its online platform and in-state properties. A substantial part of the unlawful conduct giving rise to this action occurred within this District and Plaintiff Bulgin's claims arise out of and relate directly to Defendant's conduct in California, including Defendant's advertising and disclosure of rental pricing and mandatory fees to California consumers.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Plaintiff Bulgin viewed Defendant's advertised rental pricing, communicated with Defendant, and entered into a lease agreement for a Bozzuto apartment community located in this District after relying on Defendant's advertised pricing and representations.

## FACTUAL ALLEGATIONS

**1. Factual Background**

26. Consumers' reactions to sales and to false sales are well studied in academic literature. Research shows that reference prices, such as those used by Defendant, materially impact consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[1]

27. These principles apply with equal force in the housing market, where price is often the most important factor that consumers consider. Unlike many discretionary purchases, housing is a necessity, and consumers routinely compare rental properties based on the advertised monthly rent to determine which units fit within their budgets. As a result, landlords and property management companies possess a powerful incentive to advertise lower prices than their competitors, as even small differences in an advertised rental rate can materially influence a consumer's perception of affordability and decision to pursue a particular property.

28. Over the last several decades, the United States has experienced a significant shift toward renting rather than homeownership.[2] Rising home prices, elevated mortgage rates, limited housing inventory, increasing costs of living, and growing student debt burdens have made renting the only realistic housing option for millions of Americans, particularly younger generations who face increasing barriers to homeownership and prioritize flexibility and mobility.[3] As a result, the apartment rental industry has grown into a massive and increasingly concentrated sector of the economy.

29. The apartment rental industry generates hundreds of billions of dollars annually

---

[1] Urbany, Joel E., William O. Bearden and Dan Weilbaker (1988), "The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search," Journal of Consumer Research, 15 (June), 95 110; Chandrashekaran, Rajesh (2004), "The Influence of Redundant Comparison Prices and Other Price Presentation Formats on Consumers' Evaluations and Purchase Intentions," Journal of Retailing, 80 (1), 53–66.

[2] https://fred.stlouisfed.org/series/RHORUSQ156N (Last visited: June 1, 2026).

[3] https://www.realpage.com/news/realpage-unveils-new-multifamily-rental-trends/?utm (Last visited: June 1, 2026).

and continues to experience sustained growth, with the U.S. apartment rental market projected to reach approximately $305.7 billion in 2026.[4] California in particular has one of the largest renter populations in the nation, with more than one quarter of California renters residing in large apartment complexes operated by corporate landlords.

30. Median rent in California has risen dramatically over the last decade while the rental vacancy rate has tightened. From 2010 through 2023, California median rents increased by more than $800 statewide.[5]

31. Because monthly rent is often a consumer's single largest recurring expense, apartment pricing plays a critical role in consumers' housing decisions. Prospective tenants routinely compare apartment communities based on the monthly rental prices prominently displayed online when deciding which apartments fit within their budgets and whether to pursue a particular unit.

32. The online apartment search process is heavily driven by price. Younger renters overwhelmingly conduct their housing searches online, with studies showing that approximately 74% to 78% of renters between the ages of 18 and 34 use rental search websites and applications to locate apartments, compare listings, and evaluate rental prices before deciding where to live.[6]

33. Consumers browse listings, filter by price, and eliminate options that appear to exceed their budgets, often before they ever discover mandatory fees that substantially increase the true monthly cost of renting the apartment. Because consumers rely so heavily on advertised online rental prices when comparison shopping for apartments, the omission of mandatory monthly fees from those advertised prices materially distorts the marketplace by making apartments appear more affordable than they truly are.

34. California's Honest Pricing Law, codified at California Civil Code section

---

[4] https://www.ibisworld.com/united-states/industry/apartment-rental/1349/ (Last visited: June 1, 2026).

[5] https://www.ppic.org/blog/as-people-leave-california-how-are-rental-prices-affected/ (Last visited: June 1, 2026).

[6] *Id.*

1770(a)(29), applies broadly to the "sale or lease of most goods and services that are for a consumer's personal use," including residential rental transactions and the services furnished as part of them. The statute prohibits businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges," except certain government-imposed taxes and shipping costs.

35. Because Defendant advertises a price for the package of housing and residential services it leases to consumers, Defendant must include in that price every mandatory fee a consumer will be required to pay.

36. Similarly, Virginia codified Va. Code Ann. § 59.1-608(A) in 2025. It provides: "No supplier shall, in connection with a consumer transaction, advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

37. The shift to online apartment searches has made drip pricing particularly harmful in the rental housing context. Unlike in-person apartment tours, where a prospective tenant may ask follow-up questions and negotiate pricing face-to-face, the online leasing process is structured and sequential. Consumers browse listings, filter by price, and eliminate options that appear to exceed their budgets, often before they ever discover the mandatory fees that increase the true monthly cost. This digital search environment makes consumers especially vulnerable to deceptive pricing because the initially advertised price serves as the primary filter through which all housing options are evaluated.

38. Recognizing the harm that drip pricing inflicts on consumers, California enacted its Honest Pricing Law, which took effect on July 1, 2024. As California Attorney General Bonta said, "California is soon to be the fourth biggest economy in the world — and we have a responsibility to lead on important issues protecting consumers. The bottom line is that the price consumers see should be the price consumers pay."[7]

---

[7] https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (Last visited: June 1, 2026).

39. The law was passed in response to growing evidence that businesses across multiple industries have been systematically advertising artificially low prices by excluding mandatory fees from their initial price offerings. Senator Skinner echoed, "Californians have had enough with bait-and-switch pricing, when we're not told upfront the true cost of goods and services. Whether buying tickets to a concert or sporting event or booking a vacation or a hotel, Californians deserve to know exactly how much they're being asked to pay, and not be surprised later by hidden junk fees."[8]

40. Va. Code Ann. § 59.1-608(A) passed through the Virginia General Assembly as Senate Bill 1212, and came into effect on July 1, 2025. "Virginia families deserve transparency and fairness at the checkout, and this new law delivers just that," said Delegate Adele McClure after the bill was signed into law by Gov. Glenn Youngkin. "Banning hidden 'junk' fees will provide real cost savings starting this summer, protecting Virginians from deceptive business practices and holding large corporations accountable."

41. The California Legislature and Virginia General Assembly determined that this practice undermines consumer welfare by preventing accurate price comparison, distorting competitive markets, and disproportionately burdening lower-income consumers who are most sensitive to price differences. By requiring businesses to include all mandatory fees in the initially advertised price, the Honest Pricing Law and Senate Bill 1212 ensure that consumers can make informed financial decisions based on truthful, all-inclusive pricing.

42. The need for drip pricing legislation in the rental housing market is particularly urgent because housing is a necessity. When a consumer is misled about the price of a concert ticket or a hotel room, the financial harm, while real, is limited in scope. But when a consumer is misled about the price of an apartment - a financial commitment that typically spans twelve months or longer and represents the single largest line item in a household budget - the resulting harm compounds over the duration of the lease. California's and Virginia's drip pricing protections thus serve a critical function in the rental housing context by ensuring that the state's

---

[8] *Id.*

nearly six million renting households can accurately assess and compare the true cost of housing before committing to a lease.

**2. Defendant's Unfair and Unlawful Business Practices**

43. Defendant owns and operates many apartment communities across the United States, including eighty-nine in the State of California and Commonwealth of Virginia. Defendant offers its apartments for rent on its Website, where prospective renters can browse apartments across Defendant's properties, view photos of the units, and compare prices.[9]

44. When browsing the Website, consumers are presented with a list of Defendant's apartment communities and available rental units. For each community, Defendant prominently advertises a "base rent" or "starting price" monthly rental rate. A reasonable consumer understands this representation to mean that at least one unit within that community is available to rent at the advertised price and that the advertised amount reflects the actual minimum monthly cost required to rent a unit there.

45. The advertised "starting" price serves as the primary pricing information presented to consumers during the apartment search process and is intended to be used by prospective tenants when comparing the affordability of Bozzuto's properties against competing rental communities. In reality, however, tenants are required to pay additional mandatory fees that are not included in the advertised starting price, causing the actual minimum monthly cost of renting a unit at Bozzuto properties to exceed the amount prominently displayed on the listing.

46. On the Website, Defendant promotes its communities by reference to the services and amenities available to residents, including package receipt and storage, valet and front-door trash collection, pest control, common-area maintenance and landscaping, resident account administration and billing, and on-site management and maintenance staff. Defendant performs that work, or arranges for and supervises the vendors who perform it, and charges its residents mandatory fees for it.

[9] https://www.Bozzuto.com/ (Last visited: July 30, 2026).

47. The mandatory fees at issue in this action are charges for those services. Defendant's "Trash" fee is consideration for the collection and removal of household refuse from residents' doors. Its "Pest Control" fee is consideration for the periodic treatment of units and common areas. Its "LuxerOne" fee is consideration for the operation of an automated package delivery and storage system at the community. Its "Administrative Billing" or "Admin Billing" fee is consideration for the work of maintaining resident accounts and generating and processing monthly statements and payments. Its "Amenity" fee is consideration for access to the community's shared recreational facilities. Defendant itemizes each of these charges separately from base rent, names each charge after the service it funds, sets the amount of each charge, and collects each charge for as long as the resident remains at the community.

48. The below image depicts one of Defendant's online listings for its The Asher apartment community in Alexandria, Virginia. Defendant prominently advertises that this floorplan at the property is available with a "From $2,177" monthly rental price. A reasonable consumer viewing the below image would understand this representation to mean that at least one



apartment unit within the community with that floorplan is available to rent for $2,177 per month and that $2,177 represents the minimum monthly amount required to obtain such a unit at the property.

The image demonstrates that the advertised price is based on incomplete information and purposefully presented to consumers during the apartment search process. Consumers comparing apartment communities reasonably rely on this advertised price to evaluate affordability and determine whether a property fits within their budget before investing additional time in the leasing process.

49. After selecting a floor plan, consumers are directed to available units. And Defendant continues to advertise individualized "Base Rent" amounts for particular units. For example, Defendant advertises apartment 248-2 with a starting price of $2,117.




50. A reasonable consumer would therefore understand Defendant’s "Base Rent" representation to mean that this unit is available at the advertised price and that the advertised amount reflects the minimum monthly cost required to rent that unit.

51. By displaying specific prices alongside specific units, Bozzuto communicates to consumers that those units are available at the advertised rates. The differing prices among similar units further reinforce the impression that the listed prices reflect the actual rental cost of each unit, with variations attributable to factors such as square footage, location within the property, availability, demand, or other desirable features.

52. It is only after consumers continue with the leasing process that Defendant discloses the additional, mandatory fees. As shown below, although Defendant advertised the 248-2 unit as available for $2,117 per month, Defendant later reveals that the consumer's actual monthly payment obligation is at least $2,161.64.

| Fee Name | Cost | Frequency | Fee Type |
|---|---|---|---|
| Amenity Fee - First Lease | $550.00 | Per Lease | Required |
| Application - Fee | $50.00 | One - Time | Required |
| Application - Reservation/Holding Fee | $550.00 | One - Time | Required |
| Security Deposit - Standard | $300.00 | One - Time | Required |
| Utility - Final Bill Fee | $5.00 | One - Time | Required |
| Utility - New Account Fee | $11.00 | One - Time | Required |
| Amenity - Package Delivery Service | $20.00 | Monthly | Required |
| Renter Provided Liability Insurance | Varies | Monthly | Required |
| Utility - Administrative Billing Fee | $6.64 | Monthly | Required |
| Utility - Electric Service | 3rd Party | Monthly | Required |
| Utility - Sewer Service | Usage Based | Monthly | Required |
| Utility - Stormwater Service | Usage Based | Monthly | Required |
| Utility - Trash Service | $18.00 | Monthly | Required |
| Utility - Water Service | Usage Based | Monthly | Required |

As a result, the apartment advertised at $2,117 per month is not actually available for rent at $2,117 per month. Rather, the minimum amount required to rent the unit is $2,161.64 per month. Defendant further reveals an additional $1,166 in one-time fees, which are required at the time of signing the lease agreement. Defendant's advertised price therefore does not reflect the true cost of the apartment and creates the misleading impression that consumers can obtain the unit for substantially less than Defendant ultimately requires them to pay.

53. By advertising apartment units at prices that exclude mandatory fees, Defendant creates the false impression that consumers can rent units for the advertised amounts. Consumers reasonably believe that the listed starting prices represent the actual cost of obtaining the advertised units, when in reality Defendant requires tenants to pay substantially more.

54. Defendant's deceptive advertisement scheme with The Asher is not an isolated incident. Rather, upon information and belief, Defendant employed the same pricing structure across its entire residential apartment portfolio throughout the United States, advertising deceptively low rental prices that exclude mandatory recurring fees and charges. Similar

mandatory fees are imposed at multiple California properties operated by Defendant.

55. Examples include Defendant's 1900 Broadway property in Oakland, California, which adds $7.14 in mandatory monthly fees beyond the advertised rent and $453.64 in undisclosed one-time fees. Defendant's Anara Santa Monica property in Santa Monica, California adds $42.14 in mandatory monthly fees and $300 in undisclosed one-time fees. Defendant's 4040 Wilson property in Arlington, Virginia adds approximately $26.64 in mandatory monthly fees beyond the advertised rent and $866 in undisclosed one-time fees.

56. As a result, consumers across the country are presented with advertised prices that do not reflect the true minimum cost required to rent Defendant's apartments.

**3. Bozzuto's Actions Violate both State and Federal Law**

57. A prevalent practice among property managers like Bozzuto is to advertise a lower, initial price and then tack on mandatory fees at a later time. This is known as "drip-pricing," and it has gotten the attention of many state lawmakers. States across the country, including California, Virginia, Colorado, Massachusetts, and Minnesota, have passed statutes to combat drip pricing, not only in the housing industry, but across all business. Similar statutes are under consideration in Illinois, Maryland, North Carolina, and New York.

58. These deceptive practices have also gotten the attention of federal regulators. In 2025, the FTC enacted a rule making it illegal for "any business to offer, display, or advertise any price of a covered good or service without clearly and conspicuously disclosing the total price." 16 C.F.R. § 464.2(a). This rule was enacted to apply to providers of live-event tickets and short-term lodging.

59. Before this, in 2024, the FTC brought an enforcement action against Invitation Homes Inc. for allegations of drip pricing.[10] The FTC alleged that Invitation Homes tacked on a slew of undisclosed fees, including a "Lease Easy bundle" fee, a "air filter delivery" fee, and a "smart home technology" fee, which increased tenants' rent by $60 per month. The FTC brought

---

[10] https://www.ftc.gov/system/files/ftc_gov/pdf/1-Complaint_0.pdf (Last visited: June 1, 2026).

a complaint for violations of the Federal Trade Commission Act ("FTCA") and the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, §§ 6821-6827. Invitation Homes agreed to a proposed settlement order that would require them to pay $48 million to compensate those consumers who were harmed by the deceptive pricing scheme.[11]

60. More recently, in 2025, the FTC brought a complaint against Greystar Real Estate Partners, LLC and its many subsidiaries for engaging in drip pricing.[12] The undisclosed fees charged across Greystar's many properties included a valet trash fee, package delivery fees, smart home technology fees, common area maintenance fees, administrative fees, and pest control fees, among others. The FTC estimated that Greystar collected over $100 million in hidden fees alone between August 2019 and August 2022. In December 2025, Greystar agreed to pay $24 million in fines and to correct its deceptive price advertising.[13]

61. The parallels between the FTC's case against Greystar and Bozzuto's conduct are striking and dispositive. Like Greystar, Bozzuto advertises rental prices on its website that exclude mandatory monthly fees for technology packages, trash pickup, and other unavoidable charges. Like Greystar, Bozzuto's hidden fees include technology/smart home fees, trash collection fees, and common area or association fees. And like Greystar, Bozzuto collected millions of dollars in hidden fees from tenants who were not informed of these charges at the time they made their leasing decisions. The FTC estimated that Greystar collected over $100 million in hidden fees in just four states (California, Colorado, Nevada, and Utah) between August 2019 and August 2022. Upon information and belief, Bozzuto has similarly collected tens of millions of dollars in undisclosed mandatory fees from its approximately 60,000

---

[11] https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-takes-action-against-invitation-homes-deceiving-renters-charging-junk-fees-withholding-security (Last visited: June 1, 2026).

[12] https://www.ftc.gov/system/files/ftc_gov/pdf/greystar_complaint_-_filed.pdf (Last visited: June 1, 2026).

[13] https://www.ftc.gov/news-events/news/press-releases/2025/12/greystar-agrees-pay-24-million-stop-deceptive-advertising-practices-result-ftc-colorado-lawsuit (Last visited: June 1, 2026).

apartment homes nationwide.

62. The stipulated order in *FTC v. Greystar* permanently enjoins Greystar from misrepresenting the "Total Monthly Leasing Price" of any rental unit and requires that the Total Monthly Leasing Price be displayed more prominently than any other pricing information in Greystar's advertisements. The order further requires clear and conspicuous disclosure of all mandatory fees before Greystar accepts any payment from a consumer. These remedial requirements reflect the minimum standards of pricing transparency that all property managers—including Bozzuto—are legally obligated to meet.

63. On December 8, 2025, the FTC published a business blog post titled "Are you managing a rental property? Lessons from the FTC's lawsuit against Greystar," which put the entire rental housing industry on explicit notice that drip pricing in apartment rentals violates the law. The FTC warned property managers: "Know that advertising a rental price that excludes mandatory charges is a violation of the law. So advertise the total cost of renting your unit up front." The FTC further stated: "Consumers shouldn't have to wait until they sign a lease or get their first month's bill to learn what it will actually cost to live in a rental."

64. The FTC's December 8, 2025 blog post specifically instructed property managers to "[d]o a thorough compliance check" and "[r]eview your website and advertisements to confirm they honestly advertise a rental's price, including any mandatory fees at the property." The FTC concluded by warning that it "is reviewing harmful practices in the rental housing market and will not hesitate to take action against landlords taking advantage of Americans' housing needs by hiding mandatory fees."

65. Despite the Greystar enforcement action, the settlement, and the FTC's December 2025 public warning specifically directed at property managers, Bozzuto has continued to engage in the identical drip-pricing conduct that the FTC found unlawful. Bozzuto's continued violation of law after being placed on actual notice through the Greystar enforcement action and FTC guidance demonstrates willful and knowing misconduct.

66. Rather than continue to bring enforcement actions on an individual basis, in March 2026, the FTC proposed a new rule to address deceptive fee practices not just for those

who sell live-event tickets or short-term lodging, but for those who provide rental housing as well. The Advance Notice of Proposed Rulemaking was announced March 12, 2026, and the comment period ended on April 13, 2026.

67. The deceptive actions of Defendant are identical in nature to those of Invitation Homes and Greystar that were sanctioned by the FTC. Defendant's deceptive pricing scheme violates California state law, is in violation of already-existing federal law, and will be directly outlawed by the FTC's proposed regulations.

### 4. Defendant Misleadingly Advertised the Prices of their Rental Units to Increase Profits and Gain a Competitive Edge

68. By advertising rental units at prices that excluded mandatory recurring fees, Defendant made false, misleading, and deceptive representations regarding the true cost of its apartments. Defendant knew that consumers place substantial weight on advertised rental prices when comparing housing options and that consumers are more likely to pursue apartments that appear more affordable than competing properties. Defendant therefore advertised artificially low prices in order to attract prospective tenants and distinguish its properties from those of competing landlords.

69. Through this pricing strategy, Defendant created the false impression that its apartments were available at lower prices than they actually were and, in many instances, lower prices than comparable units offered by competitors. Defendant intended consumers, including Plaintiffs and Class Members, to rely on the advertised prices when deciding whether to view, tour, apply for, and ultimately lease its apartments. By withholding mandatory fees until later in the leasing process, Defendant induced consumers to engage with its properties based on incomplete and misleading pricing information.

70. Defendant intended for Plaintiffs and Class Members to be deceived or misled by its incomplete price disclosures. As a direct and proximate result of Defendant's deceptive pricing practices, Plaintiffs and Class Members were unable to accurately compare the cost of Defendant's apartments with competing housing options, paid more than the advertised prices for their rental units, and suffered economic injury.

**5. Defendant Continues to Mislead Consumers about their Rental Prices**

71. Defendant's deceptive pricing practices provide it with a substantial competitive and financial benefit. Consumers searching for rental housing routinely compare apartment communities based on advertised monthly rent and are more likely to pursue properties that appear less expensive than comparable alternatives. By advertising rental units at deceptively lower prices, Defendant wrongly presents its inventory as more affordable in order to attract consumers who might otherwise select competing housing options.

72. Defendant's pricing strategy increases the likelihood that consumers will click on its listings, schedule tours, submit applications, and ultimately enter into lease agreements. At the same time, in violation of both California and Virginia law, by excluding mandatory fees from its advertised prices, Defendant is able to collect additional revenue from tenants without incorporating those charges into the price consumers use to comparison shop.

73. Defendant engaged in the practices complained of herein to further its private interests in increasing occupancy rates, maximizing rental revenue, and obtaining an unfair competitive advantage over landlords and property management companies that honestly disclose the full cost of renting their units upfront. Defendant's pricing practices allow it to advertise lower prices than competitors while ultimately charging consumers substantially more than the advertised amount.

74. The demand for affordable housing continues to increase as rental prices rise throughout California, Virginia, and the United States. As housing costs become an increasingly important consideration for consumers, advertised rental price becomes an even more significant factor in the apartment-selection process. Defendant knows that consumers rely on advertised prices when determining which properties fit within their budgets and when comparing competing housing options.

75. Because Defendant benefits financially from advertising artificially low prices and because consumers continue to rely on advertised rental rates when searching for housing, Defendant has a strong incentive to continue omitting mandatory fees from the prices it advertises. Absent injunctive relief, Defendant is likely to continue advertising rental units in a

manner that conceals the true minimum cost of renting its apartments and misleads consumers regarding the actual prices they will be required to pay.

76. Defendant's ongoing conduct threatens future harm to Plaintiffs, Class Members, and the general public by impairing consumers' ability to accurately compare housing options, distorting competition within the rental housing market, and depriving consumers of the pricing transparency required by California and Virginia law.

**PLAINTIFFS' EXPERIENCES**

77. In July 2025, Plaintiff Emma Krombholz entered into a lease at Defendant's "The Asher" community in Alexandria, VA, which she renewed in September 2025.

78. The initially advertised rent that Plaintiff Krombholz encountered for this apartment was $2,339 per month. However, Defendant chose not to advertise the true price of rent upfront, instead disclosing mandatory fees later in the leasing process. These fees, including an "Admin Billing Fee," a "Trash" fee, and a "LuxerOne" fee, increased the monthly cost of rent by $44.64 beyond the initially advertised price. Defendant also included a one-time, $250 "Amenity" fee and a one-time, $11 "New Account" fee.

79. Before signing that lease, in or about August and September 2025, Plaintiff Krombholz searched for apartments online and viewed Defendant's listings for The Asher on Bozzuto.com. The listing pages she viewed displayed a specific monthly dollar figure for the unit she ultimately leased, presented as the price of that apartment, with no disclosure adjacent to that figure that additional mandatory monthly charges would be added. Defendant disclosed none of the "Admin Billing Fee," "Trash" fee, "LuxerOne" fee, one-time "Amenity" fee, or one-time "New Account" fee at any point while Plaintiff Krombholz was comparing communities and deciding which apartments to pursue. Those charges were first disclosed to her only after she had selected a unit and proceeded into Defendant's online application and leasing process.

80. Plaintiff Krombholz reasonably relied on the initial price offerings made by Defendant, and believed that it represented the full monthly rent she would need to pay in order to rent her apartment. The advertised price was one of the primary reasons Plaintiff Krombholz pursued and ultimately leased this apartment rather than a competing unit.

81. Each of the hidden fees was mandatory; Plaintiff could not opt out of them and still rent her apartment. Defendant knew that these fees would be included in every lease for the listed units, knew the specific dollar amounts of each fee, and knew the resulting total monthly rent that Plaintiff would be required to pay. Despite this knowledge, Defendant chose not to disclose the true total price upfront.

82. In August 2024, Plaintiff Alexander Bulgin entered into a lease at Defendant's "1900 Broadway" community in Oakland, CA.

83. The initially advertised rent that Plaintiff Bulgin encountered was $3,363 per month. However, Defendant chose not to advertise the true price of rent upfront, instead disclosing mandatory fees later in the leasing process. These fees, including a "Trash" fee, a "Pest Control" fee, and a "Administrative Billing" fee, increased the monthly cost of rent by $65 beyond the initially advertised price.

84. Before signing that lease, in or about July and August 2024, Plaintiff Bulgin searched for apartments online and viewed Defendant's listings for 1900 Broadway on Bozzuto.com. The listing pages he viewed displayed a specific monthly dollar figure for the unit he ultimately leased, presented as the price of that apartment, with no disclosure adjacent to that figure that additional mandatory monthly charges would be added. Defendant disclosed none of the "Trash" fee, "Pest Control" fee, or "Administrative Billing" fee at any point while Plaintiff Bulgin was comparing communities and deciding which apartments to pursue. Those charges were first disclosed to him only after he had selected a unit and proceeded into Defendant's online application and leasing process.

85. Plaintiff Bulgin reasonably relied on the initial price offerings made by Defendant, and believed that it represented the full monthly rent he would need to pay in order to rent his apartment. The advertised price was one of the primary reasons Plaintiff Bulgin pursued and ultimately leased this apartment rather than a competing unit.

86. Each of the hidden fees was mandatory; Plaintiff could not opt out of them and still rent his apartment. Defendant knew that these fees would be included in every lease for the listed units, knew the specific dollar amounts of each fee, and knew the resulting total monthly

rent that Plaintiff would be required to pay. Despite this knowledge, Defendant chose not to disclose the true total price upfront.

87. Each of the fees Plaintiffs were charged funds a service furnished at the community rather than the premises themselves. Plaintiff Bulgin's "Trash" and "Pest Control" fees paid for refuse collection and pest treatment at 1900 Broadway, and his "Administrative Billing" fee paid for Defendant's administration of his resident account. Plaintiff Krombholz's "Trash" fee paid for refuse collection at The Asher, her "LuxerOne" fee paid for the operation of the community's automated package system, her "Admin Billing Fee" paid for administration of her resident account, and her one-time "Amenity" fee paid for access to the community's shared facilities. Plaintiffs paid these charges for personal, family, and household purposes, and not for any commercial or business use.

88. Bozzuto's hidden fees imposed on Plaintiffs are materially identical in nature to the fees that the FTC found unlawful in its enforcement action against Greystar. Greystar concealed mandatory technology package fees, valet and front-door trash pickup fees, common area maintenance fees, administrative fees, and pest control fees that were not reflected in its advertised rental prices. Bozzuto concealed the same categories of charges from Plaintiffs: an "Administrative Billing" fee, a "Pest Control" fee, and a "Trash" fee charged to Plaintiff Bulgin, and an "Admin Billing Fee," a "Trash" fee, and a "LuxerOne" package-delivery fee charged to Plaintiff Krombholz. Each of these charges is a fee for a service that Defendant furnishes to residents at the community, and each was mandatory and unavoidable. The FTC has already determined that this precise conduct constitutes unlawful deceptive advertising.

89. Plaintiffs and Class Members have suffered damages as a result of Defendant's practices because the advertising of the prices of Defendant's apartments was, and remains, untrue and misleading under California state law. Plaintiffs and Class Members paid more for their apartments than what they were led to believe.

## CLASS ALLEGATIONS

90. Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly

situated.

91. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **The Nationwide Class (the "Nationwide Class" or "Class")**
> All persons who, within the applicable limitations period, entered into a lease for a residential apartment unit owned, managed, or operated by Defendant after viewing or being presented with a rental price on Defendant's website that excluded mandatory fees or charges required as a condition of tenancy.
>
> **California Subclass (the "California Subclass")**
> All persons in California who, within the applicable limitations period, entered into a lease for a residential apartment unit owned, managed, or operated by Defendant after viewing or being presented with a rental price on Defendant's website that excluded mandatory fees or charges required as a condition of tenancy.
>
> **Virginia Subclass (the "Virginia Subclass")**
> All persons in Virginia who, within the applicable limitations period, entered into a lease for a residential apartment unit owned, managed, or operated by Defendant after viewing or being presented with a rental price on Defendant's website that excluded mandatory fees or charges required as a condition of tenancy.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representative, successors, and assigns of any such excluded persons.

92. Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

93. The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

94. The common-law claims for unjust enrichment, negligent misrepresentation, and fraud are asserted on behalf of the Nationwide Class and, in the alternative, on behalf of the California Subclass and the Virginia Subclass. Defendant's advertising, pricing strategies, and fee structures are established, controlled, and directed from a single corporate headquarters and

published through a single centralized website, so the conduct giving rise to those claims occurred in one place and was uniform as to every Class Member.

95. **Numerosity.** This action is appropriately suited for a class action. The members of the Classes are so numerous that the joinder of all members is impracticable. Upon information and belief, the proposed Classes contain well over 100 members, and likely thousands of individual consumers who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

96. **Common Questions Predominate.** This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the deceptive, unlawful, and unfair representations and omissions that led consumers to believe that the apartments available for rent were cheaper than they actually were. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each Class Member to recover. The questions of law and fact common to the Class are:

a. Whether Defendant made false or misleading statements of fact in its advertisements;

b. Whether Defendant's policies and actions regarding its advertising were unfair, deceptive, or misleading;

c. The accuracy of Defendant's advertised reference prices;

d. Whether failing to disclose mandatory fees upfront was likely to deceive reasonable consumers;

e. Whether Defendant's mandatory fees constitute charges for services within the meaning of California Civil Code section 1761 and Virginia Code section 59.1-198;

f. Whether Defendant was unjustly enriched as a result of its actions with respect to reference pricing and discounts advertised;

g. Whether the alleged conduct of Defendant violates California Civil Code

§§ 1750 et seq., California Business & Professions Code §§ 17500 et seq., California Business & Professions Code §§ 17200 et seq., and/or Va. Code Ann. § 59.1-608(A);

h. Whether Plaintiffs and the members of the Classes have suffered injury and have lost money or property as a result of such false or misleading discounts and reference prices;

i. Whether Defendant should be enjoined from further engaging in the misconduct alleged herein;

j. Whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

97. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiffs, like all Class Members, were exposed to Defendant's deceptive pricing practices on Defendant's Website and entered into a lease for a residential apartment unit after being presented with a rental price that excluded mandatory fees and charges. Plaintiffs and the Class Members were injured by the same course of conduct, namely Defendant's practice of advertising apartment rental prices that did not include mandatory recurring fees required as a condition of tenancy. Plaintiffs' claims arise from the same unlawful, unfair, and deceptive practices and are based on the same legal theories as the claims of all members of the Class.

98. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in Plaintiffs' best interests to prosecute the claims alleged herein to obtain full compensation due to Plaintiffs for the unfair and illegal conduct of which Plaintiffs complain. Plaintiffs also have no interests that conflict with, or are antagonistic to, the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent Plaintiffs and the interests of the Class. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class Members. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to litigate this class action adequately and vigorously. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class

and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

99. **Superiority.** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. Individual actions by Class Members seeking individual remedies will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual Class Member may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

100. Plaintiffs seek monetary damages, restitution, disgorgement, declaratory relief, and injunctive relief on behalf of the Class. Unless a class is certified, Defendant will be permitted to retain the benefits of its deceptive pricing practices while Plaintiffs and Class Members remain uncompensated for their injuries. Absent injunctive relief, Defendant is likely to continue advertising rental units at prices that exclude mandatory fees, thereby misleading consumers regarding the true cost of renting its apartments.

101. Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
**Violations of the Consumer Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1770(a)(29)(A)**
**(On Behalf of Plaintiff Bulgin and the California Subclass)**

102. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

103. Plaintiff Bulgin brings this claim individually and on behalf of the members of the

California Subclass against Defendant.

104. Plaintiff and all members of the California Subclass are "persons" and "consumers" as defined in Cal. Civ. Code § 1761(d).

105. Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

106. Plaintiff's and the California Subclass members' purchases from Defendant constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

107. The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods," Cal. Civ. Code § 1761(b), and defines a "consumer" as an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes, Cal. Civ. Code § 1761(d).

108. The CLRA further directs that its provisions "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

109. Defendant's transactions with Plaintiff Bulgin and the California Subclass were transactions intended to result, and which resulted, services to consumers. As part of the residential community experience it advertises and sells, Defendant supplies and charges separately for trash collection, pest control, package receipt and storage, resident account administration and billing, common-area maintenance, and access to on-site amenities.

110. That work is performed by Defendant or by vendors Defendant retains, directs, and supervises; it is furnished to residents for personal, family, and household purposes; and residents pay for it through the very fees Defendant omitted from its advertised prices.

111. The mandatory fees Defendant concealed are charges for services rendered within the community. Defendant's own fee labels confirm this: a "Trash" fee is consideration for refuse collection, a "Pest Control" fee is consideration for pest treatment, a "LuxerOne" fee is consideration for the operation of an automated package system, an "Administrative Billing" fee is consideration for account and billing administration, and an "Amenity" fee is consideration for

access to on-site facilities. Whatever the character of the leasehold itself, the price Defendant advertised was the price of a package that necessarily included these services, and Defendant advertised that price while excluding the mandatory charges for them.

112. This reading accords with the statute and with the Legislature's purpose in enacting it. Section 1770(a)(29) was added to the CLRA by Senate Bill 478, the Honest Pricing Law, which the Legislature directed at drip pricing across the economy and which by its terms reaches the advertisement of a price for any "good or service" offered for a consumer's personal use.

113. In the alternative, and to the extent any portion of the transaction is characterized as one for real property, Plaintiff alleges that the mandatory fees challenged here are separately itemized charges for services that are severable from the conveyance of the leasehold, and that Defendant's advertisement and display of a price that omitted those service charges violated section 1770(a)(29)(A) and section 1770(a)(9) independent of the leasehold.

114. The conduct described herein took place within the state of California and constitutes drip pricing in violation of Cal. Civ. Code § 1770(a)(29)(A).

115. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

116. Section 1770(a)(29)(A) excludes only two narrow categories of charges from the price a business must advertise: taxes and fees imposed by a government on the transaction, and postage or carriage charges that will be reasonably and actually incurred to ship a physical good to the consumer. Cal. Civ. Code § 1770(a)(29)(A).

117. As alleged herein, Defendant's mandatory monthly fees, including its "Trash" fee, "Pest Control" fee, and "Administrative Billing" fee, do not fall within either of these narrow statutory exceptions.

118. Defendant's conduct as described herein was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

a. Cal. Civ. Code § 1770(a)(29)(A): Advertising, displaying, or offering a price for a

good or service that does not include all mandatory fees and charges; and

b. Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and

119. Defendant has violated Section 1770(a)(29)(A) by advertising apartment rental prices that excluded mandatory recurring fees and charges required as a condition of tenancy. As alleged herein, Defendant advertised apartment units on its website at specified monthly rental rates, including "Base Rent" amounts that consumers reasonably understood to represent the minimum monthly cost required to rent the advertised unit. However, Defendant failed to include mandatory fees that tenants were required to pay. Because these fees were unavoidable and not optional, they were required to be included in the advertised price.

120. Defendant has violated Section 1770(a)(9) by advertising apartment units at prices that Defendant did not actually offer to consumers. Defendant advertised apartment units at specified monthly rental rates while knowing that no consumer could rent the advertised units for those prices because mandatory recurring fees would invariably be added to the transaction.

121. At the time of its misrepresentation, Defendant was aware that these mandatory fees were a part of the total monthly payment required to lease their apartments. Despite this, Defendant did not include these fees in its initial price offering for its apartments. Defendant purposefully concealed the true price of their rental units by omitting these mandatory fees.

122. Defendant’s misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

123. Defendant's deceptive pricing practices significantly impacted Plaintiff and the members of the California Subclass. The rental prices displayed on the Website were material to consumers because price is one of the most important factors considered when searching for and comparing housing options. Reasonable consumers rely on advertised rental prices to determine affordability, compare competing apartment communities, and decide whether to pursue a particular property. By advertising rental prices that excluded mandatory recurring fees, Defendant misled consumers regarding the true cost of renting its apartments. As a result,

Plaintiff and members of the California Subclass paid more than the advertised prices for their apartments and were deprived of the ability to accurately compare Defendant's properties with competing housing options.

124. Class-wide reliance may be inferred because Defendant's omissions and misrepresentations regarding the true cost of its apartments were material. A reasonable consumer would consider the total monthly cost of renting an apartment important when deciding whether to lease a unit and how much to pay for housing. Defendant's uniform practice of advertising rental prices that excluded mandatory fees was likely to deceive reasonable consumers and influence their rental decisions.

125. Defendant's omissions and misrepresentations were a substantial factor and proximate cause of Plaintiff's and the California Subclass members' injuries. Plaintiff and members of the California Subclass reasonably relied on Defendant's advertised rental prices when evaluating housing options and deciding whether to enter into lease agreements with Defendant.

126. Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they paid mandatory fees that were not included in Defendant's advertised prices and therefore paid more than the amounts Defendant represented consumers would pay for its apartments. Had Defendant accurately disclosed the total mandatory cost of renting its apartments upfront, Plaintiff and members of the California Subclass would have been able to make informed comparisons among competing housing options and may have chosen different housing arrangements.

127. Accordingly, pursuant to Cal. Civ. Code § 1780(a), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks actual damages, restitution, injunctive relief, and all other remedies available under the CLRA.

128. The practices alleged herein have caused substantial harm to Plaintiff, the California Subclass, and the general public. Plaintiff's and the California Subclass members' injuries were proximately caused by Defendant's unlawful, unfair, and deceptive business practices. Upon information and belief, Defendant continues to advertise apartment rental prices

that exclude mandatory recurring fees and charges. Absent injunctive relief, Defendant's deceptive pricing practices will continue to mislead consumers regarding the true cost of renting its apartments.

129. Plaintiff therefore seeks a permanent injunction requiring Defendant to comply with California law by including all mandatory fees and charges in the rental prices advertised on its website and in its marketing materials. Plaintiff further seeks attorneys' fees, costs, and all other relief available under the CLRA, including a public injunction designed to protect consumers from Defendant's ongoing deceptive pricing practices.

130. Pursuant to Cal. Civ. Code § 1782(a), on July 1, 2026 — more than thirty days before this action was commenced — Plaintiff Bulgin notified Defendant in writing, by certified mail, return receipt requested, addressed to Defendant’s principal place of business, of the particular violations of Section 1770 alleged herein, and demanded that Defendant correct, repair, replace, or otherwise rectify the conduct alleged to violate Section 1770. Defendant received that notice and failed to provide an appropriate correction, repair, replacement, or other remedy within the time permitted by the statute.

131. Concurrently with the filing of this Complaint, Plaintiff Bulgin files the affidavit required by Cal. Civ. Code § 1780(d), showing that this action has been commenced in a proper forum because Defendant does business in this District and Defendant’s advertising and the transaction at issue occurred here.

**SECOND CAUSE OF ACTION**
**Violation of California’s False Advertising Law (“FAL”),**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(On Behalf of Plaintiff Bulgin and the California Subclass)**

132. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

133. Plaintiff Bulgin brings this claim individually, and on behalf of the members of the California Subclass against Defendant.

134. Defendant has violated Section 17500 of the California Business and Professions Code.

135. Defendant has engaged in false or misleading advertising in violation of the FAL by advertising rental unit prices that did not include all mandatory fees and charges, thereby understating the true cost of renting its apartments. These advertisements had the capacity, likelihood, and tendency to deceive or confuse the public.

136. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that its advertised rental prices were inaccurate and misleading because they omitted mandatory fees that Defendant knew would be charged to every tenant.

137. California's False Advertising Law prohibits not only advertising that is literally false, but also advertising that, although technically true, is likely to mislead or deceive reasonable consumers. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"). To state a claim under the FAL, it is sufficient to allege that members of the public are likely to be deceived by the challenged advertising. *Id.*

138. Defendant advertised apartment rental prices that did not reflect the true minimum cost required to rent its apartments. The prices displayed on Defendant's website excluded mandatory recurring fees and charges that tenants were required to pay as a condition of tenancy, causing the advertised prices to be materially lower than the actual prices consumers were required to pay.

139. Defendant's advertised rental prices did not clearly, accurately, or conspicuously disclose that mandatory fees would be added to the advertised price. Nor did Defendant disclose the total price consumers would be required to pay until later in the leasing process. As a result, reasonable consumers were likely to believe that the advertised rental prices represented the actual monthly cost of renting the advertised units.

140. Defendant's deceptive pricing practices led Plaintiff and the members of the California Subclass to make rental decisions based on incomplete and misleading pricing information. Defendant's omissions and misrepresentations were intended to induce consumers

to pursue, apply for, and lease Defendant's apartments by creating the false impression that the apartments were available at lower prices than Defendant actually charged. Plaintiff reasonably relied on Defendant's advertised rental prices when deciding to rent an apartment from Defendant.

141. Class-wide reliance may be inferred because Defendant's omissions and misrepresentations regarding the true cost of its apartments were material. A reasonable consumer would consider the total monthly cost of renting an apartment important when deciding whether to lease a unit and when comparing competing housing options.

142. Defendant's omissions and misrepresentations were a substantial factor and proximate cause of the damages suffered by Plaintiff and the members of the California Subclass.

143. Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they paid mandatory fees that were excluded from Defendant's advertised prices and therefore paid more than the amounts represented in Defendant's advertising. Had Defendant accurately disclosed the total mandatory cost of renting its apartments at the outset, Plaintiff and members of the California Subclass would have been able to make informed purchasing decisions and may have selected alternative housing options.

144. Plaintiff and the California Subclass Members do not have an adequate remedy at law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action. Indeed, Plaintiff and the California Subclass Members continued to be charged undisclosed and unlawful fees in association with their leases. Accordingly, injunctive relief is necessary to prevent future harm.

145. Plaintiff and the California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus,

restitution would allow recovery even when normal consideration associated with damages would not.

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiff Bulgin and the California Subclass)**

146. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

147. Plaintiff Bulgin brings this claim individually, and on behalf of the members of the California Subclass against Defendant.

148. Defendant's acts and omissions alleged herein, including Defendant's violations of the CLRA, the False Advertising Law, California's Honest Pricing Law, and other California consumer protection statutes, constitute unlawful, unfair, and fraudulent business practices in violation of the UCL.

149. Defendant's conduct violates the "unlawful" prong of the UCL because Defendant advertised apartment rental prices that excluded mandatory fees and charges required as a condition of tenancy. Defendant's conduct further violates California Civil Code section 1770(a)(29)(A), California Civil Code section 1770(a)(9), California Civil Code section 1770(a)(5), California Civil Code section 1770(a)(14), and California's Honest Pricing Law. Defendant also engaged in unlawful conduct by disseminating deceptive and misleading advertisements concerning the true price of its apartments.

150. Defendant's conduct also violates the "fraudulent" prong of the UCL because Defendant advertised apartment rental prices that did not reflect the true minimum cost required to rent its apartments. By displaying rental prices that excluded mandatory recurring fees, Defendant created the false impression that consumers could rent apartments for the advertised amounts when, in reality, consumers were required to pay substantially more. These representations and omissions were likely to deceive reasonable consumers.

151. Defendant's material omissions and misrepresentations are likely to mislead reasonable consumers because rental price is one of the most important factors consumers

consider when searching for housing. Reasonable consumers viewing Defendant's advertised rental prices would believe that the prices represented the actual monthly cost of renting the advertised apartments or, at a minimum, the minimum monthly cost required to obtain the advertised units.

152. Plaintiff and the members of the California Subclass relied upon Defendant's omissions and misrepresentations concerning the true cost of renting Defendant's apartments.

153. Defendant's omissions and misrepresentations were material because a reasonable consumer would consider the total monthly cost of renting an apartment important when deciding whether to lease a unit and when comparing competing housing options. Class-wide reliance may therefore be inferred.

154. The Greystar enforcement action further demonstrates that Bozzuto’s drip-pricing scheme constitutes a “uniform course of conduct likely to mislead” the entire class. The FTC found that Greystar’s identical practice of advertising rental prices while hiding mandatory fees was inherently deceptive to all consumers exposed to it. Because Bozzuto uses the same centralized website and identical pricing format across all of its properties, every class member was necessarily exposed to the same material misrepresentation: an advertised rental price that excluded mandatory fees the consumer would be required to pay.

155. Defendant's conduct, as alleged herein, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

156. Defendant violated the "unfair" prong of the UCL by advertising apartment rental prices that excluded mandatory recurring fees and charges. Defendant's conduct offends established public policy favoring price transparency, harms consumers' ability to compare housing options, and provides Defendant with an unfair competitive advantage over landlords that accurately disclose the full cost of renting their apartments.

157. Defendant further violated established public policy by violating the CLRA, the FAL, and California's Honest Pricing Law, each of which was enacted to ensure consumers receive accurate upfront pricing information regarding the goods and services they purchase. Defendant's conduct also violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. §

45(a), which prohibits unfair or deceptive acts and practices in or affecting commerce, and contravenes the policy embodied in the FTC's rule making it unlawful for "any business to offer, display, or advertise any price of a covered good or service without clearly and conspicuously disclosing the total price," 16 C.F.R. § 464.2(a), and in the FTC's December 8, 2025 guidance directing property managers to advertise the total cost of renting a unit up front.

158. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct, Defendant received monies from Plaintiff and members of the California Subclass to which it was not entitled, including mandatory fees that were excluded from Defendant's advertised prices. Such monies are subject to restitution.

159. Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they paid more than Defendant's advertised prices for their apartments and were deprived of the opportunity to accurately compare the true cost of Defendant's apartments with competing housing options. Had Defendant accurately disclosed the total mandatory cost of renting its apartments, Plaintiff and Class Members may have selected alternative housing options or negotiated differently.

160. The harm to Plaintiff and the members of the California Subclass greatly outweighs any utility associated with Defendant's conduct. There is no legitimate public benefit to concealing mandatory fees from advertised rental prices. Defendant's conduct distorts competition, impairs informed consumer decision-making, and undermines the transparency required by California law.

161. Plaintiff and the members of the California Subclass could not reasonably avoid the injury caused by Defendant because the existence and amount of Defendant's mandatory fees were not disclosed until later in the leasing process, after consumers had already relied upon Defendant's advertised prices.

162. Without injunctive relief, Defendant will continue to harm Plaintiff, the members of the California Subclass, and prospective tenants. Upon information and belief, Defendant continues to advertise apartment rental prices that exclude mandatory recurring fees and charges.

163. Plaintiff, on behalf of himself and all members of the California Subclass, seeks

public injunctive relief under the UCL requiring Defendant to advertise apartment rental prices that include all mandatory fees and charges and otherwise comply with California law.

164. Plaintiff and the California Subclass Members do not have an adequate remedy at law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action. Indeed, Plaintiff and the California Subclass Members continued to be charged undisclosed and unlawful fees in association with their leases. Accordingly, injunctive relief is necessary to prevent future harm.

165. Defendant's actions have caused substantial harm to Plaintiff, the California Subclass, and the public. These practices are ongoing and likely to continue unless enjoined by this Court.

166. Accordingly, Plaintiff seeks a permanent injunction prohibiting Defendant from engaging in such unlawful, unfair, and fraudulent business practices. Plaintiff and the California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

## FOURTH CAUSE OF ACTION
**Violation of Va. Code Ann. § 59.1-608(A)**
**(On Behalf of Plaintiff Krombholz and the Virginia Subclass)**

167. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

168. Plaintiff Krombholz brings this claim individually and on behalf of the members of the Virginia Subclass against Defendant.

169. Plaintiff and all members of the Virginia Subclass are "person[s]" as defined in Va. Code Ann. § 59.1-198.

170. Defendant is a "supplier" as defined in Va. Code Ann. § 59.1-198.

171. Plaintiff's and the Virginia Subclass members' purchases from Defendant constitute "consumer transactions" under Va. Code Ann. § 59.1-198.

172. Va. Code Ann. § 59.1-608(A) states: "No supplier shall, in connection with a consumer transaction, advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

173. As alleged herein, Defendant's mandatory monthly and one-time fees, including its "LuxerOne" fee, "Amenity" fee, "Trash" fee, and "Admin Billing" fee were not conspicuously displayed when Defendant first advertised the total cost of renting their apartments.

174. Each of these charges is consideration for a service Defendant furnishes to residents — refuse collection, package receipt and storage, resident account administration, and access to community amenities — and each is a mandatory fee or surcharge that Va. Code Ann. § 59.1-608(A) requires to be included in the total price Defendant displays. Defendant did not display any total price that included them.

175. None of the exemptions in Va. Code Ann. § 59.1-609 applies to Defendant. Defendant is not a motor vehicle dealer charging fees authorized by law, an electric utility, a natural gas utility, a telecommunications service provider, a provider of settlement services, an air carrier, a restaurant, a hotel, a price-variable supplier, a provider of broadband Internet access service, a live-event ticket provider, or a food delivery platform, and no federal law preempts application of Chapter 58 of Title 59.1 to Defendant's advertising of residential rents.

176. Under Va. Code Ann. § 59.1-610, any violation of Chapter 58 of Title 59.1 constitutes a prohibited practice under Va. Code Ann. § 59.1-200 and is subject to all of the enforcement provisions of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 et seq., including the private right of action conferred by Va. Code Ann. § 59.1-204.

177. The exclusion in Va. Code Ann. § 59.1-199(5) for aspects of a consumer transaction subject to the Virginia Residential Landlord and Tenant Act does not bar this claim. That exclusion expressly does not reach an act or practice of a landlord that constitutes a misrepresentation or fraudulent act or practice under Va. Code Ann. § 59.1-200. Defendant's

conduct is exactly that. Defendant affirmatively advertised and displayed monthly prices that it knew no consumer could pay to obtain the advertised apartment, and it concealed mandatory charges whose existence and amount it had already fixed and intended to impose. That conduct misrepresents the price and terms on which Defendant's apartments are offered and constitutes a deception, false pretense, and misrepresentation in connection with a consumer transaction within the meaning of Va. Code Ann. § 59.1-200(A)(5) and (A)(14).

178. The conduct challenged here also consists of Defendant's advertising to prospective tenants before any tenancy exists, which the Virginia Residential Landlord and Tenant Act does not govern.

179. Defendant's conduct as described herein was and is in violation of Va. Code Ann. § 59.1-608(A).

180. Defendant has violated Va. Code Ann. § 59.1-608(A) by advertising apartment rental prices that excluded mandatory recurring fees and charges required as a condition of tenancy. As alleged herein, Defendant advertised apartment units on its Website at specified monthly rental rates, including "Base Rent" amounts that consumers reasonably understood to represent the minimum monthly cost required to rent the advertised unit. However, Defendant failed to include mandatory monthly fees that tenants were required to pay. Because these fees were unavoidable and not optional, they were required to be included in the total price.

181. At the time of its misrepresentation, Defendant was aware that these mandatory fees were a part of the total monthly payment required to lease their apartments. Despite this, Defendant did not include these fees in its initial price offering for its apartments. Defendant purposefully concealed the true price of their rental units by omitting these mandatory fees.

182. Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

183. Defendant's deceptive pricing practices significantly impacted Plaintiff and the members of the Virginia Subclass. The rental prices displayed on the Website were material to consumers because price is one of the most important factors considered when searching for and

comparing housing options. Reasonable consumers rely on advertised rental prices to determine affordability, compare competing apartment communities, and decide whether to pursue a particular property. By advertising rental prices that excluded mandatory recurring fees, Defendant misled consumers regarding the true cost of renting its apartments. As a result, Plaintiff and members of the Virginia Subclass paid more than the advertised prices for their apartments and were deprived of the ability to accurately compare Defendant's properties with competing housing options.

184. Class-wide reliance may be inferred because Defendant's omissions and misrepresentations regarding the true cost of its apartments were material. A reasonable consumer would consider the total monthly cost of renting an apartment important when deciding whether to lease a unit and how much to pay for housing. Defendant's uniform practice of advertising rental prices that excluded mandatory fees was likely to deceive reasonable consumers and influence their rental decisions.

185. Defendant's omissions and misrepresentations were a substantial factor and proximate cause of Plaintiff's and the Virginia Subclass members' injuries. Plaintiff and members of the Virginia Subclass reasonably relied on Defendant's advertised rental prices when evaluating housing options and deciding whether to enter into lease agreements with Defendant.

186. Plaintiff and the members of the Virginia Subclass were injured as a direct and proximate result of Defendant's conduct because they paid mandatory fees that were not included in Defendant's advertised prices and therefore paid more than the amounts Defendant represented consumers would pay for its apartments. Had Defendant accurately disclosed the total mandatory cost of renting its apartments upfront, Plaintiff and members of the Virginia Subclass would have been able to make informed comparisons among competing housing options and may have chosen different housing arrangements.

187. Accordingly, pursuant to Va. Code Ann. §§ 59.1-204 and 59.1-610, Plaintiff Krombholz, on behalf of herself and all other members of the Virginia Subclass, seeks the greater of actual damages or the statutory award authorized by Va. Code Ann. § 59.1-204, treble damages on account of Defendant’s willful violations, reasonable attorney fees and court costs,

and all other remedies available under the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 et seq.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and members of the Nationwide Class)**

188. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

189. Plaintiffs bring this claim in the alternative to any contract-based claims or defenses that may be asserted by Defendant.

190. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

191. Plaintiffs' leases neither disclose nor authorize the deceptive advertising practice challenged here. To the extent Defendant contends that a lease provision governs the mandatory fees, Plaintiffs allege in the alternative that no enforceable contract governs Defendant's retention of amounts obtained through that practice, and that Plaintiffs lack an adequate remedy at law for the restitution they seek because the measure of Defendant's unjust gain — the mandatory fees it collected across the Class — can be established from Defendant's own records even where individual damages proof would be difficult.

192. Plaintiffs and the members of the Class conferred a direct benefit upon Defendant by paying rent and mandatory recurring fees in connection with residential apartment leases obtained through Defendant's deceptive pricing practices.

193. Plaintiffs and the members of the Class reasonably believed that the rental prices advertised on Defendant's website represented, or at minimum closely approximated, the actual monthly cost required to rent Defendant's apartments. Instead, Defendant advertised apartment units at prices that excluded mandatory recurring fees and charges that tenants were required to pay as a condition of tenancy.

194. By advertising artificially low rental prices while omitting mandatory fees, Defendant created a misleading impression regarding the true cost of its apartments. This

practice made Defendant's properties appear more affordable than they actually were and more competitively priced than comparable housing options. As a result, consumers were induced to pursue, apply for, and lease Defendant's apartments based on incomplete and misleading pricing information.

195. Defendant knowingly accepted and retained payments from Plaintiffs and the members of the Class, including mandatory fees and charges that were excluded from the prices Defendant advertised to consumers. Defendant benefited financially from its deceptive pricing practices by attracting tenants with advertised prices that did not reflect the actual cost of renting its apartments.

196. By its wrongful acts and omissions described herein, including its practice of advertising apartment rental prices that excluded mandatory recurring fees and charges, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

197. Plaintiffs' and the Class members' losses, and Defendant's enrichment, were directly related to and flowed from Defendant's deceptive pricing practices. Defendant obtained revenues, fees, and other financial benefits that it would not have obtained, or would not have obtained on the same terms, had it accurately disclosed the total cost of renting its apartments.

198. Defendant has profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiffs and the members of the Class. Under the circumstances alleged herein, it would be inequitable and unjust for Defendant to retain the benefits, profits, fees, and other compensation obtained through its deceptive pricing practices.

199. Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

200. Accordingly, Plaintiffs and the members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all monies, profits, benefits, fees, and other compensation wrongfully obtained and retained by Defendant as a result of the conduct alleged herein.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and members of the Nationwide Class)**

201. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

202. Defendant made false and misleading statements of fact and material omissions concerning the true price of its apartment units. Specifically, Defendant advertised apartment rental prices that excluded mandatory recurring fees and charges that tenants were required to pay as a condition of tenancy. These representations were false and misleading because the advertised rental prices did not reflect the actual minimum cost required to rent the advertised apartments. Defendant knew, or acted recklessly in not knowing, that consumers could not rent the advertised apartments for the prices prominently displayed on its website.

203. Defendant made a positive assertion of fact each time it displayed a specific dollar figure as the "Base Rent," "starting price," or "From" price of an identified apartment, because that figure asserted that the identified apartment could be obtained for that amount. Defendant had no reasonable ground for believing that assertion to be true. It knew the amount of every mandatory fee, knew that each fee would be charged to every tenant of the advertised unit, and therefore knew that the advertised figure was not the minimum amount at which the unit was available.

204. Defendant had a duty to accurately disclose the total price consumers would be required to pay for its apartments, including all mandatory fees and charges. Defendant further had a duty not to advertise apartment rental prices in a manner that was likely to mislead reasonable consumers regarding the true cost of renting a unit. Reasonable consumers were likely to be deceived, and were deceived, by Defendant's failure to disclose material pricing information.

205. Defendant made the representations at issue in the marketplace, to prospective tenants who had no contractual relationship with Defendant at the time the representations were made, for the purpose of inducing them to enter Defendant's leasing process. The loss Plaintiffs seek to recover — money paid in mandatory fees they were never told about — is therefore not a disappointed contractual expectation, and this claim does not seek recovery for the failure of any promised contractual performance.

206. Defendant knew that consumers comparing housing options would rely on the rental prices displayed on its website. Defendant further knew that the advertised prices excluded mandatory recurring fees and therefore did not represent the actual minimum monthly cost required to rent the advertised apartments.

207. Defendant's representations and omissions were made with the intent that Plaintiff and the members of the Class would rely upon them when evaluating housing options and deciding whether to pursue, apply for, and lease Defendant's apartments. Defendant intended that consumers would view its apartments as more affordable than they actually were and more competitively priced than comparable housing alternatives.

208. Defendant employed this pricing scheme to attract prospective tenants, increase occupancy, maximize rental revenue, and obtain an unfair competitive advantage over landlords that accurately disclose the full cost of renting their apartments.

209. Defendant intended that Plaintiffs and the members of the Class rely upon its misleading pricing representations and omissions. Plaintiff and the members of the Class reasonably relied upon Defendant's advertised rental prices when making housing decisions. Had Defendant accurately disclosed the total mandatory cost of renting its apartments, Plaintiffs and Class Members would not have leased Defendant's apartments on the same terms and may have selected alternative housing options.

210. Plaintiffs' and the Class Members' claims of negligent misrepresentation are suitable for class treatment because they stem from Bozzuto's "common course of conduct" in uniformly advertising rental prices that exclude mandatory fees. Here, Bozzuto's pricing misrepresentations are not merely similar across the class—they are identical, generated by the same centralized website and applied uniformly to all prospective tenants.

211. Had Defendant disclosed the mandatory fees and the true minimum monthly cost of its apartments upfront, Plaintiffs and the members of the Class reasonably would have behaved differently. Among other things, they would have been able to accurately compare Defendant's apartments with competing housing options and make informed decisions regarding whether to lease a unit from Defendant.

212. As a direct and proximate result of Defendant's conduct, Plaintiffs and the members of the Class suffered damages because they paid mandatory fees that were excluded from Defendant's advertised prices and therefore paid more than Defendant represented consumers would pay for its apartments.

**SEVENTH CAUSE OF ACTION**
**Fraud**
**(On Behalf of Plaintiff and members of the Nationwide Class)**

213. Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

214. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

215. Defendant made false and misleading representations of material fact to Plaintiff and the members of the Class regarding the true price of its apartment units. Specifically, Defendant advertised apartment rental prices on its website that excluded mandatory recurring fees and charges that tenants were required to pay as a condition of tenancy, thereby representing that the advertised prices reflected the actual monthly cost of renting its apartments when, in fact, they did not.

216. Defendant’s representations were false. Defendant knew at the time the representations were made that its advertised rental prices did not include all mandatory fees and charges and that consumers could not rent the advertised units for the prices displayed. Defendant knew the specific amount of each mandatory fee, knew that such fees would be charged to every tenant, and knew that the total monthly cost of renting its apartments materially exceeded the amounts it advertised.

217. Defendant made the false representations with the intent to deceive and defraud Plaintiffs and the members of the Class. Defendant deliberately advertised artificially low rental prices in order to induce consumers to pursue, apply for, and lease its apartments based on incomplete and misleading pricing information. Defendant intended for consumers to rely upon its advertised prices and to enter into lease agreements without full knowledge of the mandatory

fees that would materially increase the cost of renting.

218. Plaintiffs and the members of the Class justifiably relied upon Defendant's false representations. A reasonable consumer viewing Defendant's advertised rental prices would believe that the prices represented the actual monthly cost required to rent the advertised apartments. Plaintiffs and Class Members reasonably relied on Defendant's advertised prices when evaluating housing options, comparing competing apartments, and deciding whether to enter into lease agreements with Defendant.

219. The class-wide nature of Bozzuto's fraud is further demonstrated by the FTC's finding that identical drip-pricing conduct by Greystar was inherently deceptive to all consumers exposed to it. Because Bozzuto's fraud arises from a "common course of conduct"—a single, uniform pricing scheme applied identically across all properties and all consumers—it is eminently suitable for class treatment.

220. As a direct and proximate result of Defendant's intentional misrepresentations and fraudulent concealment, Plaintiffs and the members of the Class suffered damages. Plaintiffs and Class Members paid mandatory fees that were excluded from Defendant's advertised prices and therefore paid more than Defendant represented consumers would pay for its apartments. Had Defendant truthfully disclosed the total mandatory cost of renting its apartments, Plaintiffs and Class Members would not have leased Defendant's apartments on the same terms, or at all, and may have selected alternative housing options.

221. Defendant's conduct was willful, wanton, and malicious, demonstrating a conscious disregard for the rights of Plaintiffs and the members of the Class. Defendant's deceptive pricing scheme was calculated to maximize revenue at the direct expense of consumers. Plaintiffs and the members of the Class are therefore entitled to an award of punitive damages in an amount sufficient to deter Defendant from engaging in similar conduct in the future.

## EIGHTH CAUSE OF ACTION
**Declaratory Relief**
**(On Behalf of Plaintiff and members of the Nationwide Class)**

222. Plaintiffs repeat and reallege each and every allegation contained in the preceding

paragraphs as if fully set forth herein.

223. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant.

224. Defendant's imposition of mandatory fees that exceed the advertised price for its apartments is unlawful under the CLRA, the FAL, the UCL, California's Honest Pricing Law, and Va. Code Ann. § 59.1-608(A), each of which was enacted to ensure consumers receive accurate upfront pricing information regarding the goods and services they purchase.

225. Plaintiffs and Class Members seek a declaration that Defendant's implementation and imposition of mandatory fees, above the advertised price of its apartments, is unlawful and may not be enforced. Plaintiff and the Class Members continued to be charged undisclosed and unlawful fees in association with their leases, which Defendant maintains are lawful and properly charged, despite notice of allegations of this Complaint.

226. Accordingly, pursuant to 28 U.S.C. § 2201, Plaintiffs and the Class seek a judicial determination of their contractual obligations, specifically regarding whether Defendant may continue charge, and whether Plaintiff and the Class must continue to pay, the unlawful and undisclosed mandatory fees, as alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiff's undersigned attorneys as Class Counsel to represent the Classes;

B. For an Order declaring that Defendant's conduct violated the laws referenced herein;

C. For an Order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. For an Order awarding actual, statutory, treble, and punitive damages as

applicable;

E. For an Order awarding pre-judgment and post-judgment interest on all amounts awarded;

F. For injunctive relief as pleaded or as the Court may deem proper;

G. For a declaration of the parties rights and obligations with respect to the mandatory fees alleged herein;

H. For disgorgement and restitution to Plaintiffs and the members of the Classes of all monies received or collected from Plaintiffs and the members of the Classes and all other forms of equitable relief;

I. For an Order awarding reasonable attorneys' fees and expenses and costs of suit; and

J. For such other and further relief as the Court may deem proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury.

Date: August 12, 2026

Respectfully submitted:

By:*/s/Trenton R. Kashima*
Trenton R. Kashima (SBN 291405)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Telephone: (212) 946-9389
tkashima@brysonpllc.com

James R. DeMay*(*pro hac vice* forthcoming)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
900 W. Morgan Street
Raleigh, NC 27602
jdemay@brysonpllc.com

J. Hunter Byrson*(*pro hac vice* forthcoming)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
11 Park Place, 3rd Floor
New York, NY 10007
hbryson@brysonpllc.com

Attorneys for Plaintiffs & the Putative Class

**pro hac vice* admission to be sought